IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CELESTINE GEORGE, </br>as Administrator of the Estate of </br>Charles I. Braggs, deceased, </br></br>     Plaintiff, </br></br>v. </br></br>WEXFORD HEALTH SOURCES, </br>INC., *et al.*, </br></br>     Defendants. | ) </br>) </br>) </br>) </br>) </br>) </br>) CIVIL CASE NO. 2:22-cv-434-ECM </br>) [WO] </br>) </br>) </br>) </br>) |

## **MEMORANDUM OPINION and ORDER**

### I.  INTRODUCTION

Plaintiff Celestine George ("Plaintiff"), as Administrator of the Estate of Charles I. Braggs ("Braggs"), deceased, seeks compensatory and punitive damages against the Defendants for alleged violations of the Eighth Amendment to the United States Constitution in addition to an associated state law claim for wrongful death, arising out of Braggs' death while in the custody of the Alabama Department of Corrections ("ADOC").  In her first amended complaint (the operative complaint), the Plaintiff asserts three claims:  deliberate indifference to serious mental health care needs in violation of the Eighth Amendment by Defendant Wexford Health Sources, Inc. ("Wexford") pursuant to 42 U.S.C. § 1983 ("Count I"); wrongful death against Wexford under Alabama state law ("Count II"); and deliberate indifference to serious mental health care needs in violation of the Eighth Amendment by Defendants Jefferson Dunn ("Dunn") and

Ruth Naglich ("Naglich" and, together with Dunn, the "ADOC Officials") in their individual capacities, pursuant to § 1983 ("Count III"). (Doc. 37).

The original complaint in this case was filed on July 26, 2022. (Doc. 1). In response, the ADOC Officials filed a motion to dismiss or, in the alternative, motion to strike arguing that the complaint was an improper "shotgun" pleading, and that the allegations failed to state a claim for various reasons, including qualified immunity.[1] (Doc. 19). The Court granted the motion in part and ordered the Plaintiff to file an amended complaint after finding the original complaint to be a "shotgun" pleading. (Doc. 36 at 4–5). Accordingly, the Plaintiff filed her first amended complaint on June 30, 2023. (Doc. 37).

Now pending before the Court is the ADOC Officials' motion to dismiss the sole claim asserted against them (Count III) in the first amended complaint.[2] (Doc. 40). They seek the dismissal on three grounds: (1) the amended complaint remains a shotgun pleading; (2) the amended complaint fails to state a claim for deliberate indifference pursuant to § 1983; and (3) qualified immunity shields the ADOC Officials from liability for the Plaintiff's § 1983 claim. (Doc. 40 at 2).

The motion is fully briefed and ripe for review. After careful consideration, the Court concludes that the ADOC Officials' motion is due to be GRANTED, and Count III against Defendants Dunn and Naglich is due to be DISMISSED with prejudice.

---

[1] Defendant Wexford filed an answer and did not join in the motion to strike. (Doc. 13).

[2] Defendant Wexford filed an answer to the first amended complaint and did not join the motion to dismiss. (Doc. 44).

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the [C]ourt must accept as true all factual allegations in the complaint and draw all reasonable inferences in the [P]laintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the

speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations and citations omitted). Indeed, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and citations omitted).

## IV. FACTS[3]

Braggs, an inmate in ADOC's custody, hanged himself in his cell while in solitary confinement in the restrictive housing unit at St. Clair Correctional Facility ("St. Clair") on July 27, 2020. Braggs was 28 years old and had spent nearly a decade of his life in solitary confinement. Moreover, due to chronic understaffing of correctional staff, Braggs rarely received the required five hours of weekly out-of-cell time. The Plaintiff alleges that apart from occasional showers or health-care appointments, some weeks Braggs received no time out of his cell.

Due to the stress associated with segregation, inmates in solitary confinement are supposed to receive mental-health assessments every ninety days. Braggs received just two mental health assessments during his time at the St. Clair restrictive housing unit— one in December 2018 and another in March 2019. Braggs reported auditory hallucinations, sleep disturbances, and possible paranoid/delusional thought content

---

[3] This recitation of the facts is based on the Plaintiff's first amended complaint. The Court recites only the facts pertinent to resolving the ADOC Officials' motion to dismiss. For purposes of ruling on the motion, the facts alleged in the first amended complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

during these assessments. In the two weeks prior to his death, Braggs had been asking for mental-health services. No details regarding the precise contents of these requests are alleged in the first amended complaint or to whom the requests were made. Then, on the morning of July 27, 2020, Braggs placed a medical request on a sick call form to see a nurse because he had been "having seizures lately." (Doc. 37 at 27). Braggs was not seen for this request. Later that night, a nurse requested three separate times between 7:15 p.m. and 8:00 p.m. that correctional officers bring Braggs to the infirmary after speaking with Braggs during medical rounds that evening. At 8:15 p.m., Braggs was found dead in his cell.

In her operative complaint, the Plaintiff alleges that the court in *Braggs v. Dunn* ("*Braggs*"),[4] an ongoing class action in this district, identified "serious deficiencies" as it relates to mental healthcare provided in ADOC facilities.[5] (Doc. 37 at 8). Specifically, these deficiencies include failure to identify prisoners with mental illness, inadequate monitoring of suicidal inmates, and inappropriate use of segregation for mentally ill inmates. (*Id.*). Further, the Plaintiff cites a December 2021 order (or opinion) from the *Braggs* court in which the court found that understaffing at ADOC facilities "places mentally ill inmates in ADOC custody at substantial risk of serious harm, including decompensation, victimization, self-injury, and death." (*Id.* at 10 (citing *Braggs*, 2:14-cv-00601, doc. 3462 at 78 (M.D. Ala., Thompson, J.)). The Plaintiff alleges that the ADOC

---

[4] 257 F. Supp. 3d 1171, 1220 (M.D. Ala. June 27, 2017).

[5] The lead plaintiff in *Braggs* is not Charles Braggs; the identical surnames are merely coincidental.

Officials were aware of these failures and "of the risks these failures posed to seriously mentally ill inmates, including Charles Braggs, but nonetheless failed to remedy the issues." (*Id.* at 10).

The Plaintiff now brings this action on behalf of Braggs' estate against Wexford and the ADOC Officials. Wexford entered into a contract with ADOC in or around April 2018 to provide medical and mental health care services in ADOC's facilities. Meanwhile, Dunn served as the Commissioner of ADOC from January 2015 until December 2021, and Naglich served as the Associate Commissioner of Health Services at ADOC during the relevant time period of Braggs' incarceration.

## V. DISCUSSION

The ADOC Officials move to dismiss all claims asserted against them in the first amended complaint on several grounds, including that the complaint remains a "shotgun" pleading and fails to state a claim under § 1983. Additionally, the ADOC Officials argue they are entitled to qualified immunity based on insufficient allegations of personal participation (direct liability) or a causal connection (supervisory liability) with Braggs' death, and in any event, the law was not clearly established as to provide the ADOC Officials notice their conduct could violate the Constitution. (Doc. 46 at 11–14).

The Eighth Amendment prohibits cruel and unusual punishments, which the Supreme Court has held to bar the display by prison officials of "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim of this sort includes both an objective and subjective

component. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The objective component is straightforward: the Plaintiff must prove an objectively serious medical need, which is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'—that, 'if left unattended, poses a substantial risk of serious harm.'" *Id.* On the other hand, the subjective component contains subcomponents, in which the Plaintiff must prove that prison officials: (1) had "subjective knowledge of a risk of serious harm"; (2) they disregarded that risk; and (3) did so through conduct that was more than mere negligence.[6] *Id.*

Supervisory officials, such as the ADOC Officials, can be held liable under § 1983 actions for constitutional violations on two grounds: "(1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Gray v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006). A causal connection can be established in one of two ways: "(1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Doe v. School Bd. of Broward Cnty. Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

---

[6] Currently, the third subcomponent is the subject of an upcoming *en banc* hearing by the Eleventh Circuit to potentially determine whether the conduct must be more than mere negligence or gross negligence. *See Wade v. McDade*, 67 F.4th 1363, 1370–71 (11th Cir.), *reh'g en banc granted, opinion vacated sub nom*. *Wade v. Ga. Corr. Health, LLC*, 83 F.4th 1332 (11th Cir. 2023). As will be later explained, the Court need not, and does not, address this subcomponent in ruling on the ADOC Officials' motion.

Because the single count (Count III) against the ADOC Officials is due to be dismissed on the grounds that the ADOC Officials are entitled to qualified immunity for the reasons stated below, the Court will assume without deciding that the complaint is not a "shotgun" pleading and does not fail to state a claim under § 1983. Therefore, the Court will focus its analysis on qualified immunity.

**A.  Qualified Immunity**

The ADOC Officials invoke the defense of qualified immunity. Qualified immunity is "an immunity from suit" that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Any plaintiff suing a government official under 42 U.S.C. § 1983 has a steep hill to climb. The doctrine of qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see also Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020). The ADOC Officials bear the initial burden of showing they were "acting within [their] discretionary authority." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019) (citation omitted). The burden then shifts to the Plaintiff to show (1) that the ADOC Officials "violated a constitutional right" and (2) that "this right was clearly established at the time of the alleged violation." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (citation omitted). Once the

burden shifts, the Court may address the two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). Thus, qualified immunity can often be addressed on the second prong alone. *See Fuqua v. Turner*, 996 F.3d 1140, 1149 (11th Cir. 2021).

Here, the Plaintiff does not dispute that the ADOC Officials were acting within their discretionary authority. (*See* doc. 37 ¶¶ 8–9, 229–30, 233, 236; *see generally* doc. 45). The Court elects to turn first to the second prong of the qualified immunity analysis: whether the operative complaint has sufficiently alleged facts which show that the ADOC Officials' actions violated clearly established law.

**B.     The "Clearly Established" Prong**

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive fair notice that their conduct violates clearly established law. First, the words of a federal statute or constitutional provision may be specific enough to clearly establish the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law. *Id.* at 1350. The Eleventh Circuit labels such a case an "obvious clarity" case. *Id.* Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statute on its face, the court must turn its attention to case law that espouses broad statements of principle not tied to particularized facts. *Id.* at 1351. In these types of cases, courts will declare conduct unconstitutional regardless of the

specific factual situation. *Id.* Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, if the circumstances facing the official are *materially similar* to those of a fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

The Plaintiff argues that the law is clearly established, although she does not specify on which of the above three methods this argument rests. Based on the allegations raised in the operative complaint, the Court concludes that the present case does not fit into the "obvious clarity" category and, thus, the Plaintiff must demonstrate that the illegality of the ADOC Officials' alleged conduct was clearly established through broad statements of principle espoused in case law or through cases with substantially similar facts. The Plaintiff "must carry th[is] burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the relevant State Supreme Court." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012)). To do so, the Plaintiff cites two Eleventh Circuit cases: *Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990) and *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982). (Doc. 45 at 18). However, as correctly argued by the ADOC Officials, these two cases are distinguishable from the present action. (*See* doc. 46 at 11–13).

1.  *Greason*

Charles Greason was an inmate in the custody of the Georgia Department of Corrections ("GDOC") who hung himself from his cell bars using his sweatshirt in October 1985. *Greason*, 891 F.2d at 833. Greason had a history of suicidal ideation and attempted suicide in at least one other instance. *Id.* at 832–33. Additionally, Greason was on the facility's mental health caseload. *Id.* Less than two months prior to Greason's suicide, Dr. Frank Fodor, a psychiatrist for GDOC, inexplicably discontinued Greason's anti-depressant without reviewing Greason's clinical file, which contained notes on Greason's suicidal tendencies, or assessing Greason's mental status to determine his risk of suicide. *Id.* at 832. Moreover, Dr. Fodor did not instruct the staff member responsible for Greason's care to monitor him for any issues in relation to the medication change. *Id.* Dr. Fodor met with Greason once more a few weeks later wherein Dr. Fordor failed to perform a mental health assessment on Greason and again left no instructions for the staff. *Id.* Shortly thereafter, Greason's parents reported concerns about their son's mental health to staff following a visit with Greason—the Greasons specifically stated that they feared their son was suicidal and urged that he be transferred to a hospital. *Id.* at 832–33. Staff informed the Greasons that the matter would be handled but, instead, did nothing. *Id.* at 833. Twenty-four days later, Greason was found hanging in his cell. *Id.* The Greasons filed an action on behalf of their deceased son pursuant to § 1983 against prison officials and those who provided his mental health care. *Id.*

11

The *Greason* court ultimately held that deliberate indifference to an inmate's mental health care is actionable under the Eighth Amendment and that, at the time of Greason's suicide, reasonable persons in the defendants' position would have known that their actions violated clearly established law. *Id.* at 834. Then, in light of the facts described above, the court held that a jury could find that both Dr. Fodor and the staff provided grossly inadequate care. *Id.* at 835–36. Additionally, the court held that certain prison officials were liable because, among other reasons, they were aware of specific issues regarding Dr. Fodor's care following a case one year prior in which Timothy Waldrop, another GDOC inmate, had committed several acts of self-mutilation following the abrupt discontinuation of Waldrop's anti-depressant. *Id.* at 837–40.

There are no allegations in the operative complaint of prior suicidal ideation, suicide attempts, or self-harm on the part of Braggs about which Dunn or Naglich knew or should have known. Instead, the operative complaint references symptoms of mental illness—namely, auditory hallucinations, sleep disturbances, and possible paranoid/delusional thought content noted during Braggs' two mental health assessments while in St. Clair. (Doc. 37 at 27). While these symptoms are concerning and signs of potential mental illness, the Plaintiff neither alleges a formal diagnosis of mental illness nor deprivation of prescribed medication to alleviate said symptoms, as was the case in *Greason*. *See Greason*, 891 F.2d at 832–34. Moreover, the complaint does not allege facts which would allow the inference that the ADOC Officials subjectively knew about Braggs' symptoms. Similarly, the lack of alleged facts regarding suicidal ideation and

suicide attempts distinguishes the present case from the district court case cited by the Plaintiff, which had found that the ADOC Officials were on notice regarding conduct surrounding another inmate's suicide that violated clearly established law. (Doc. 45 at 18 (citing *Abrams v. Dunn*, No. 2:20-cv-00011-MHH, 2021 U.S. Dist. LEXIS 211918, at *30 (N.D. Ala. Nov. 3, 2021))).[7] Therefore, *Greason* does not clearly establish the law applicable to the present case as it does not present facts materially similar to the present case, nor does it sufficiently espouse a broad principle unmoored to particularized facts.

### 2.   *Williams*

*Williams*, likewise, provides no refuge for the Plaintiff.  The Plaintiff asserts that *Williams* stands for the broad proposition that "when an institution fails to comply with a court order and an individual suffers the precise sort of harm the court order had been designed to remedy, the institution's officials may be liable in their individual capacity for that harm if their deliberate indifference caused the failure to comply with the court order." (Doc. 45 at 18–19 (citing *Williams*, 689 F.2d at 1385)).  The Plaintiff further elaborates that the *Braggs* court found that:

> [C]onditions within the ADOC violated the Eighth Amendment and subjected prisoners to a substantial risk of harm, including suicide, and entered orders designed to remedy those constitutional violations, but Dunn and Naglich failed to implement those orders and, because of their failure to do so, Braggs died from the very sort of harm the orders were designed to protect against.

---

[7] The Court notes that district court decisions cannot provide the basis for finding the law to be "clearly established" under the Eleventh Circuit's qualified immunity framework. *Gaines*, 871 F.3d at 1208.

(Doc. 45 at 19). However, the *Williams* court made no such broad pronouncement which would put this case in the Eleventh Circuit's second category of cases. Instead, the *Williams* court discussed, in part, the preclusive effect of prior litigation on the determination of conditions of Alabama prisons in a specified time period. *Williams*, 689 F.2d at 1386.

*Williams* centered on an inmate at Holman Prison named Bobby Williams who was assaulted by another inmate, Larry Cook, in January 1978. *Williams*, 689 F.2d at 1374. During this assault, Cook stabbed Williams multiple times and rendered Williams a permanent quadriplegic. *Id.* Williams brought an action under § 1983, the Eighth Amendment, the Fourteenth Amendment, and other provisions against a slew of prisons officials and included a state law claim against Cook. *Id.* Ultimately, after the grant of partial summary judgment on the basis of Eleventh Amendment immunity for state officials, dismissal of the state law claim against Cook, directed verdicts against two of the defendants, and a jury verdict, no defendant was held liable in connection with the assault on Williams. *Id.* Notably, the eventual jury trial was held for prison officials in their individual capacity rather than their official capacities. *Id.* at 1380. Williams appealed to the Eleventh Circuit relying upon *Pugh v. Locke*,[8] a prior class action in which Alabama officials were held liable in their individual and official capacities for living conditions in Alabama prisons, including exposure to the constant threat of

---

[8] 406 F. Supp. 318, 331 (M.D. Ala. 1976), *aff'd and remanded sub nom. Newman v. State of Ala.*, 559 F.2d 283 (5th Cir. 1977), *cert. granted in part, judgment rev'd in part sub nom. Alabama v. Pugh*, 438 U.S. 781 (1978).

violence from other inmates, which constituted cruel and unusual punishment violative of the Eighth Amendment. *Williams*, 689 F.2d at 1375.

The Eleventh Circuit held that *Pugh* prevented Alabama prison officials from relitigating whether Williams was denied reasonable protection from violence; however, *Pugh* did not "preclude litigation on the issue of the degree of culpability of each defendant-that is, whether each defendant exhibited 'deliberate indifference,' which was a producing cause of the [E]ighth [A]mendment violation." *Id.* at 1382. The court observed that "when individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken in *Pugh*, where only declaratory and injunctive relief were sought for constitutional violations pervading an entire prison system." *Id.* at 1383. Such rationale applies here as *Braggs* is a class action focused on injunctive relief for systemic issues at ADOC wherein officials are sued in their official capacities, and in the present case, the Plaintiff seeks damages against the ADOC Officials in their individual capacities. In other words, *Williams* does not stand for the proposition that the findings in *Braggs* preclude an individualized analysis of the ADOC Officials' culpability in relation to Braggs' death. Indeed, *Williams* indicates that an individualized analysis *is* required.

In essence, by arguing that *Williams* stands for a broad proposition of individual liability stemming from systemic class actions, the Plaintiff attempts to cobble together factual findings from a prior district court case, *Braggs*, and Eleventh Circuit case law on deliberate indifference to overcome qualified immunity. But this is a bridge too far, as it

15

asks this Court to leapfrog the requisite analysis of culpability for individual defendants for alleged violations of the Eighth Amendment.  And, as the above discussion indicates, the Plaintiff's invocation of *Williams* suffers a similar infirmity as her invocation of *Greason*—chiefly that its facts are too dissimilar to the present case, thereby taking *Williams* out of the Eleventh Circuit's third category of cases as well.  Accordingly, *Williams* does not provide a basis for finding clearly established law applicable to the present case.

The present case does not fall into any of the Eleventh Circuit's three categories for determining whether the law is "clearly established" as outlined in the *Vinyard* case. Therefore, the Plaintiff fails to satisfy the second prong of the analysis to overcome qualified immunity, and Count III against the ADOC Officials is, consequently, due to be DISMISSED with prejudice on this basis.

## VI.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the ADOC Officials' Motion to Dismiss (doc. 40) is GRANTED, and Count III against Defendants Dunn and Naglich is DISMISSED with prejudice.  It is further

ORDERED that Defendants Dunn and Naglich are DISMISSED as parties to this action.

Done this 14th day of March, 2024.

                                        /s/ Emily C. Marks
                              EMILY C. MARKS
                              CHIEF UNITED STATES DISTRICT JUDGE